IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JED STEWART LINEBERRY, § | | |
| ID # 10296-078, § | | |
| Plaintiff, § | | |
| vs. § | No. 3:08-CV-0597-G (BH) | |
| § | | |
| UNITED STATES OF AMERICA, § | Referred to U.S. Magistrate Judge | |
| et al., § | | |
| Defendants. § | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

By Order of Reference dated January 9, 2009, the District Court referred this case for recommendation. Before the Court is the *Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, and Brief in Support* (hereinafter "Def.'s Mot.") filed by the United States on July 30, 2008,[1] and *Plaintiff's Motion to Strike, Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment, and Brief in Support or in the Alternative, Plaintiff's Answers and Brief in Support* (hereinafter "Pl.'s Mot.") filed on or about September 26, 2008.

Based on the relevant filings and applicable law, the Court recommends that Plaintiff's motion to strike be **DENIED** and Defendant's motion to dismiss be **GRANTED**.

**I. BACKGROUND**

**A. Procedural Background**

On or about April 7, 2008, Plaintiff, a federal prisoner formerly incarcerated in Federal Correctional Institution ("FCI") Seagoville, filed this action against the United States and the Federal Bureau of Prisons ("BOP"). In his original complaint, he sought monetary damages and broad ranging injunctive relief against the named defendants under 42 U.S.C. § 1983 and the Federal Tort

---

[1] Based upon a May 30, 2008 order, the only defendant remaining in this action is the United States. Thus, although the motion is purportedly filed by the United States, the Federal Bureau of Prisons, and Harley Lappin, the Court considers it only as a motion by the United States.

Claims Act ("FTCA") for two attacks on him by other federal prisoners as a result of alleged overcrowding at FCI Seagoville. He claimed that his injuries resulted from official policies of defendants: (1) to place a "management variable" on him so as to place him in a low security prison facility rather than at a camp facility; (2) to massively overcrowd all federal low security institutions; and (3) to place in low security facilities inmates who are illegally in the United States.[2] He also claims that such institutions were understaffed, and that he has evidence that prison staff ordered a prisoner to assault him in retaliation for filing a prior civil action.

On May 15, 2008, it was recommended that the District Court summarily dismiss (1) Plaintiff's claims under 42 U.S.C. § 1983 against both defendants with prejudice for failure to state a claim upon which relief can be granted and (2) Plaintiff's FTCA claims against the BOP for lack of subject matter jurisdiction. It was further recommended that Plaintiff's FTCA claims for monetary damages against the United States proceed and process issue as to such claims.

On or about May 27, 2008, Plaintiff objected to the recommendations and filed an amended complaint to name Harley Lappin, Director of BOP, as a defendant. On May 30, 2008, the District Court accepted the May 15, 2008 recommendations thereby dismissing Plaintiff's claims under § 1983 and his FTCA claims against the BOP, and allowing his FTCA claims for monetary damages against the United States to proceed. (*See* Orders of May 30, 2008, docs. 12-13.) The District Court also recognized Plaintiff's amended complaint,[3] and dismissed Plaintiff's claims against Defendant Lappin for lack of jurisdiction. (*See* Doc. 13.) The only claims remaining are Plaintiff's FTCA

---

[2] To some extent, each of these three alleged policies encompass Plaintiff's contention that he was harmed by an official policy used to screen and "calculate inmate point status" for purposes of determining where to house inmates.

[3] Other than slightly altering page 1, inserting a new page 2, and renumbering the original page 2 as page 2½, the amended complaint appears identical to the original complaint. The only significant difference is the addition of Lappin as a defendant.

claims for monetary damages against the United States.

After being served with process, the United States filed the instant motion to dismiss under Fed. R. Civ. P. 12(b)(1) and (6) and alternate motion for summary judgment. Plaintiff responded to that filing with his motion to strike and alternatively, his "answers and brief in support." The United States thereafter filed a response to Plaintiff's motion. The issues are ripe for consideration.

**B. <u>Undisputed Factual Background</u>**

In early 2003, Plaintiff was convicted of (1) making false declarations before a court; (2) unlawful transportation of firearms; and (3) money laundering. (Def.'s Mot. at 1-2; Am. Compl. at 7.) He received an aggregate 153-month sentence, and was placed at FCI Seagoville. (Def.'s Mot. at 1-2; Am. Compl. at 7.)

On May 26, 2005, the BOP requested that a management variable be applied to Plaintiff for purposes of greater security because his federal offense involved possession of nine firearms while operating "a prostitution ring disguised as an escort service." (*See* Ex. D attached to Def.'s Mot.) Simultaneously, the BOP requested that Plaintiff – a minimum security inmate at that time– be transferred to a higher security facility. (*Id.*) At that time, BOP Program Statement ("PS") 5100.07, *Inmate Security Designation and Custody Classification*, provided for the application of management variables "to reflect and support the professional judgment of Bureau staff in order to ensure placement in the most appropriate security level institution." *See* PS 5100.07, Ch. 7, at 9 (portions attached to Def.'s Mot. as Ex. C).[4] With respect to a variable for "Greater Security", the program statement provided: "In circumstances where an inmate represents a greater security risk . . . than their assigned security level, they may be placed in an institution outside normal guidelines . . .."

---

[4] The BOP rescinded PS 5100.07 on September 12, 2006, when it replaced it with BOP PS P5100.08, *Inmate Security Designation and Custody Classification*.

*Id.* at 13.[5] The requests for a management variable and transfer were granted resulting in Plaintiff's transfer to the low security institution at FCI Seagoville.

On April 24, 2007, Plaintiff and another inmate ("Inmate A") were placed into a Special Housing Unit ("SHU") for fighting. (*See* Ex. E attached to Def.'s Mot.) After being released from the SHU on May 29, 2007, Plaintiff reported an assault by a different inmate ("Inmate B"), which resulted in both inmates being placed in the SHU. (*See* Ex. F attached to Def.'s Mot.)

## II. MOTION TO STRIKE

Plaintiff has filed a motion to strike Defendant's motion to dismiss and alternate motion for summary judgment. He seeks to strike the motions because (1) they fail to state a defense to his claim and (2) the allegations within them are impertinent, scandalous, and only made to create prejudice against him. (Pl.'s Mot. at 2.)

Plaintiff provides no statutory or other authority for his motion to strike. As amended in December 2007, Fed. R. Civ. P. 12(f) grants the Court discretion to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, this rule does not permit the Court to strike motions or matters within them because the rule applies only to pleadings. *See Shah v. Chertoff*, No. 3:05-CV-1608-BH, 2007 WL 2948362, at *5 (N.D. Tex. Oct. 10, 2007). Rule 7(a) of the Federal Rules of Civil Procedure defines "pleading" for purposes of Rule 12(f), and limits the term to "a complaint, an answer, a reply to a counterclaim, an answer to a cross-claim, a third-party complaint, a third-party answer, or a reply to an answer or third-party answer." *Groden v. Allen*, No. 3:03-CV-1685-R, 2004 WL 578825, at *1 (N.D. Tex. Mar. 5, 2004). Moreover, Rule 12(f) motions "are viewed with disfavor" and courts should grant them "only when

---

[5] The successor to PS 5100.07 contains identical language. *See* PS P5100.08, Ch. 5, at 5.

the pleading to be stricken has no possible relation to the controversy." *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 645 (N.D. Tex. 2007) (citations omitted), *appeal dismissed*, 258 Fed. App'x 702 (5th Cir. 2007), and *cert. denied*, 128 S. Ct. 2905 (2008).

Plaintiff does not seek to strike a pleading within the meaning of Rule 12(f), and the motions sought to be stricken – even if construed as pleadings – have a definite relation to the controversy set out in Plaintiff's complaint and contain no redundant, immaterial, impertinent, or scandalous matters. Accordingly, the Court should deny Plaintiff's motion to strike and construe it as a response to Defendant's motion to dismiss and alternate motion for summary judgment.

### III. RULE 12(b)(1) MOTION TO DISMISS

Although Defendant seeks dismissal under Fed. R. Civ. P. 12(b)(6) and summary judgment under Fed. R. Civ. P. 56, it also challenges this Court's jurisdiction over this case on three grounds. (*See* Def.'s Mot. at 1, 7-12.) A motion to dismiss for lack of subject matter jurisdiction is properly brought pursuant to Rule 12(b)(1).

#### A. Legal Standard

Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims. *See Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id*. When the court dismisses for lack of subject matter jurisdiction, that dismissal "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that

does have proper jurisdiction." *Id*.

The district court may dismiss for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). The Fifth Circuit recognizes a distinction between a "facial attack" and a "factual attack" upon a complaint's subject matter jurisdiction. *Rodriguez v. Tex. Comm'n on the Arts*, 992 F. Supp. 876, 878 (N.D. Tex. 1998), *aff'd*, 199 F.3d 279 (2000). "A facial attack requires the court merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction" by examining the allegations in the complaint, which are presumed to be true. *Id*. If the defendant supports the motion with evidence, however, then the attack is "factual" and "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413. Regardless of the attack, "[t]he plaintiff constantly bears the burden of proof that jurisdiction does exist." *Rodriguez*, 992 F. Supp. at 879 ("The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.").

In this case, Defendant supports its 12(b)(1) motion with evidence outside Plaintiff's complaint. (*See* Exs. B through F, attached to Def.'s Mot.) The motion thus represents a factual attack on the Court's jurisdiction. Because Plaintiff does not contest the facts within Defendant's proffered evidence, however, the Court has no need to resolve disputed facts.[6]

---

[6] As mentioned in a later footnote, Plaintiff disagrees with Defendant's contention that he has not exhausted his administrative remedies with respect to one claim. Resolution of that disagreement does not appear to involve contested facts, and in any event, the Court ultimately does not need to resolve that dispute.

## B. FTCA Jurisdiction

"Generally, the United States enjoys sovereign immunity from suit unless it has specifically waived immunity." *Jeanmarie v. United States*, 242 F.3d 600, 602 (5th Cir. 2001). "Congress enacted the FTCA as a limited waiver of the sovereign immunity of the United States." *Johnston v. United States*, 85 F.3d 217, 218-19 (5th Cir. 1996).

> The FTCA gives federal district courts jurisdiction over claims against the United States for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

*Sheridan v. United States*, 487 U.S. 392, 398 (1988) (quoting 28 U.S.C. § 1346(b)). Despite the apparent broad reach of FTCA jurisdiction, the FTCA specifically exempts various categories of claims from the waiver of immunity. *See Ali v. Fed. Bureau of Prisons*, 128 S. Ct. 831, 835 (2008) (citing §§ 2680(a)-(n)). Defendant argues that two exceptions to FTCA jurisdiction apply in this case. (*See* Def.'s Mot. at 7-12.)

### 1. *Discretionary Function Exception*

Defendant first argues that the Court lacks jurisdiction because the FTCA's discretionary function exception, 28 U.S.C. § 2680(a), preserves governmental immunity against Plaintiff's claims of inadequate staffing, overcrowding, and improper placement in a low security facility with illegal aliens and gang members. (Def.'s Mot. at 7-12.)

Although "the FTCA waives sovereign immunity and permits suits against the United States sounding in state tort for money damages", it specifically "excepts discretionary functions and duties from this waiver of sovereign immunity." *Freeman v. United States*, ___ F.3d ___, ___, 2009 WL

7

146579, at *6 (5th Cir. Jan. 22, 2009) (citation omitted).[7] The discretionary function exception provides that the waiver of immunity does not apply to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984).

Courts conduct a two-part test to determine whether conduct qualifies as a discretionary function or duty under § 2680(a). *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991).

> First, for the exception to apply, the challenged act must involve an element of judgment. In other words, the Government needs to establish there was "room for choice" in making the allegedly negligent decision. If a "federal statute, regulation or policy" specifically prescribes a course of action for the federal employee to follow, the employee has no choice but to adhere to the directive. If the Government can establish that the challenged act involved an element of judgment, step two of the test is met and the discretionary-function exception will apply only if that judgment is of the kind that the exception was designed to shield.

*Ashford v. United States*, 511 F.3d 501, 505 (5th Cir. 2007) (footnotes and citations omitted); *accord Freeman*, 2009 WL 146579, at *8. For the first prong, "'it is the nature of the conduct, rather than the status of the actor' that governs whether the exception applies." *Gaubert*, 499 U.S. at 322 (quoting *Varig Airlines*, 467 U.S. at 813). As for the second prong, "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but

---

[7] Although *Freeman* addresses claims under the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121- 5208, and its discretionary function exception, § 5148, the Fifth Circuit held that such exception has the same applicability as the similarly named exception in the FTCA, 28 U.S.C. § 2680(a). *See Freeman*, 2009 WL 146579, at *7. Its discussion of the FTCA and the Stafford Act thus has equal applicability in the current context.

on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 325. Furthermore, "if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Id.* at 324.

In this case Plaintiff claims that Defendant's official policies placed him in unnecessary danger and resulted in injury to him. (Am. Compl. at 1.) The challenged conduct falls into four categories: (1) placing a "management variable" on him; (2) overcrowding low security facilities; (3) understaffing such facilities due the overcrowding; and (4) placing illegal aliens in such facilities. (*Id.* at 3.)

Placement decisions are governed by 18 U.S.C. § 3621, which grants the BOP discretion to "designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau . . . [and] that the Bureau determines to be appropriate and suitable." Classification decisions are governed by 18 U.S.C. § 4081, which provides:

> The Federal penal and correctional institutions shall be so planned and limited in size as to facilitate the development of an integrated system which will assure the proper classification and segregation of Federal prisoners according to the nature of the offenses committed, the character and mental condition of the prisoners, and such other factors as should be considered in providing an individualized system of discipline, care, and treatment of the persons committed to such institutions.

"These statutory provisions do not mandate a specific, non-discretionary course of conduct for the BOP to follow in classifying prisoners and placing them in a particular institution." *Cohen v. United States*, 151 F.3d 1338, 1343 (11th Cir. 1998). They instead "give the BOP ample room for judgment by listing a non-exhaustive set of factors for the BOP to consider and leaving to the BOP what weight to assign to any particular factor." *Id.* Placement and classification decisions fall within the FTCA's discretionary exception. *Id.* at 1343-44. Consequently, the decision to place Plaintiff and

9

illegal aliens in a low security facility falls within such exception. Because placing a management variable on an inmate is merely a discretionary step within the broader placement decision for that inmate, *see* PS 5100.07, the decision whether to place a management variable on a particular inmate also falls within the discretionary function exception.

Likewise, because overcrowding is simply a short-hand way of saying that the BOP placed too many inmates in a particular facility, the alleged act of overcrowding is nothing more than multiple decisions to place inmates at a particular facility – each of which falls within the discretionary exception. When the plaintiff fails to point to a "specific prison policy or regulation that constrained prison officials' judgment other than the prison's general duty to protect its prison population", the discretionary function exception bars FTCA claims regarding inmate safety. *Cf. Ashford v. United States*, 511 F.3d 501, 505 (5th Cir. 2007) (distinguishing a line of cases, including *Santana-Rosa v. United States*, 335 F.3d 39 (1st Cir. 2003), because the inmates in such cases "could not" point to such a specific policy or regulation, whereas Ashford had pointed toward a prison policy which "required" that he be put into solitary confinement pending investigation of an asserted concern about a security threat from another inmate). Plaintiff has pointed to no statute, regulation, or policy which mandates that the BOP limit the number of inmates at FCI Seagoville or any other federal prison.[8] Plaintiff's allegation of negligent overcrowding falls within the discretionary function exception of the FTCA, and thus falls outside the FTCA's limited waiver of sovereign immunity. Consequently, the Court lacks FTCA jurisdiction over this claim.

Allegations of understaffing are also excepted from FTCA liability under the discretionary

---

[8] Overcrowding in a prison setting does not even violate the United States Constitution unless it creates a condition which deprives inmates of the minimal civilized measure of life's necessities. *See Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981). As previously mentioned, the Court has already dismissed Plaintiff's constitutional claims.

function exception. *See Santana-Rosa*, 335 F.3d at 44 (holding that the "allocation of guards and other correctional staff must be viewed as falling within the discretionary function exception"). Despite "a general duty of care to safeguard prisoners [under 18 U.S.C. § 4042], the BOP retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception."[9] *Cohen v. United States*, 151 F.3d 1338, 1342 (11th Cir. 1998). The mandate to protect prisoners within § 4042 does not define "a non-discretionary course of action specific enough to render the discretionary function exception inapplicable." *Campillo v. U.S. Penitentiary*, 203 Fed. App'x 555, 557 (5th Cir. 2006) (per curiam). With respect to his claim of understaffing, Plaintiff has alleged no statute, regulation, or policy which mandates a certain guard to prisoner ratio or otherwise establishes a mandatory staffing level. In the absence of such an allegation, the discretionary function exception bars this FTCA claim. *Cf. Ashford*, 511 F.3d at 505.

Plaintiff strenuously asserts that this Court has jurisdiction over his claims. (*See* Pl.'s Mot. at 24-28.) However, he fails to recognize or accept that he may not pursue his constitutional tort claims under the FTCA, *see FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994), and that the Court has already dismissed his non-FTCA claims. He also relies on cases that did not involve the discretionary function exception to the FTCA. In particular, he relies on *United States v. Muniz*, 374 U.S. 150

---

[9] When jurisdiction exists under the FTCA, "the duty of care owed by the Bureau of Prisons to federal prisoners is fixed by 18 U.S.C. § 4042, independent of an inconsistent state rule." *United States v. Muniz*, 374 U.S. 150, 164-65 (1963). Among other things not relevant to this action, 18 U.S.C. § 4042 requires the BOP to "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States" and to "provide for the protection" of such persons. However, [t]he Government is not an insurer of the safety of a prisoner." *Jones v. United States*, 534 F.2d 53, 54 (5th Cir. 1976). The "plaintiff must show that the Government was negligent in exercise of its responsibilities" under § 4042. *Id.* State law, furthermore, controls liability for negligence under the FTCA. *Hollis v. United States*, 323 F.3d 330, 334 (5th Cir. 2003).

(1963).[10] (*See* Pl.'s Mot. at 24-25.) *Muniz*, however, specifically recognized the existence of potential exceptions to FTCA jurisdiction, such as the discretionary function and intentional tort exceptions, that were not before the Court for review. *See* 374 U.S. at 163; *Cohen*, 151 F.3d at 1341 (distinguishing *Muniz* because the Supreme Court "expressly reserved the issue of whether the discretionary function exception applies").

Plaintiff's arguments for finding jurisdiction are unpersuasive, and the Court lacks subject matter jurisdiction over Plaintiff's FTCA claims of inadequate staffing, overcrowding, and improper placement in a low security facility with illegal aliens and gang members.

### 2. *Intentional Tort Exception*

With respect to Plaintiff's claim that prison staff arranged for him to be assaulted by another prisoner, Defendant argues that the intentional tort exception, 28 U.S.C. § 2680(h), eliminates FTCA jurisdiction because the alleged misconduct did not occur during a search, seizure, or arrest. (Def.'s Mot. at 12.)

Under the intentional tort exception, the federal courts generally lack FTCA jurisdiction over "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). However, § 2680(h) does not eliminate FTCA jurisdiction in all circumstances. It contains a law enforcement proviso that retains jurisdiction "with regard to acts or omissions of investigative or law enforcement officers of the United States Government" for "any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false

---

[10] In *Muniz*, the Supreme Court recognized that prisoners as a class were not barred from bringing claims under the FTCA for negligent medical practices or negligent supervision of prison officials that permitted an assault by fellow inmates. 374 U.S. at 150-53, 165.

arrest, abuse of process, or malicious prosecution."[11] *Id.* The statute defines "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.*

Plaintiff claims that prison staff arranged for an inmate to assault him in retaliation for a prior lawsuit. (Am. Compl. at 8.) Had a prison staff member personally assaulted Plaintiff, there is no question that an FTCA claim would arise out of the assault. *See United States v. Shearer*, 473 U.S. 52, 57 (1985). Using another inmate to assault Plaintiff does not remove the intentional misconduct aspect of Plaintiff's allegation. Because Plaintiff alleges intentional misconduct on the part of prison employees resulting in an assault, he asserts an intentional tort that is generally excluded from FTCA jurisdiction. However, if the alleged misconduct falls within the law enforcement proviso for "acts or omissions of investigative or law enforcement officers of the United States Government," FTCA jurisdiction exists.

In general, BOP officials are law enforcement officers within the meaning of § 2680(h). *See Chapa v. U.S. Dep't of Justice*, 339 F.3d 388, 390 (5th Cir. 2003) (relying on *Carlson v. Green*, 446 U.S. 14 (1980)). To fall within the parameters of the law enforcement proviso, Plaintiff's complaint "must at a minimum" allege wrongdoing based upon acts or omissions that occurred while the BOP officials were engaged in investigative or law enforcement activities. *Cross v. United States*, 159 Fed. App'x 572, 576 (5th Cir. 2005) (quoting *Employers Ins. v. United States*, 815 F. Supp. 255, 259 (N.D. Ill. 1993)). Unless the BOP officials were acting in an investigative or law enforcement capacity, there is no FTCA jurisdiction under the law enforcement proviso. *See id.* When BOP officials arrange for an inmate to assault another inmate, they are neither acting in an investigative

---

[11] The historical and statutory notes of § 2680 identify March 16, 1974, as the date of the enactment of the proviso.

nor law enforcement capacity. Consequently, there is no FTCA jurisdiction over Plaintiff's claim of such arranged assault.[12]

Plaintiff argues that *Muniz* permits an FTCA claim based upon the assault of another inmate. (Pl.'s Mot. at 24-25.) *Muniz*, however, dealt with a claim that prison officials were negligent in failing to prevent the assault. *United States v. Muniz*, 374 U.S. 150, 153 (1963). This claim, on the other hand, alleges intentional wrongdoing on the part of prison staff in affirmatively arranging his assault by another inmate. As reflected in dictum in *Muniz*, "the Government is not liable for the intentional torts of its employees" under 28 U.S.C. § 2680(h). *United States v. Muniz*, 374 U.S. 150, 163 (1963). For these reasons, the intentional tort exception removes FTCA jurisdiction over Plaintiff's claim that prison staff arranged another inmate to assault him.[13]

In conclusion, the discretionary function and intentional tort exceptions to FTCA jurisdiction over Plaintiff's claims apply. The Court should therefore find that it lacks subject matter jurisdiction over the FTCA claims raised in this action and grant Defendant's Rule 12(b)(1) motion to dismiss.

---

[12] Defendant urges the Court to follow *Pooler v. United States*, 787 F.2d 868 (3d Cir. 1986). *Pooler* construed the law enforcement proviso of § 2680(h) as providing jurisdiction over the listed intentional torts only when committed "while executing a search, seizing evidence, or making an arrest." 787 F.2d at 872. However, like the court in *Employer Insurance*, "this Court need not subscribe to the strict view of the statute that was adopted in *Pooler*" to find no jurisdiction in this case. *See* 815 F. Supp. at 259.
> Instead the fair reading of the Section 2680(h) proviso is that even if the FTCA action for such intentional torts is not based on an actual search or seizure of evidence or arrest, it must at a minimum charge the government with wrongdoing based on "acts or omissions of investigative or law enforcement officers" *while they are engaged in investigative or law enforcement activities.*

*Id.* Because under the facts of this case, the law enforcement proviso does not confer jurisdiction under the less restrictive construction set out in *Employer Insurance* and quoted with approval in *Cross*, the Court need not determine whether it should follow the more restrictive construction set out in *Pooler*.

[13] Defendant also contends that the Court lacks jurisdiction over this claim under 28 U.S.C. § 2675(a) because Plaintiff failed to raise the claim through the FTCA administrative process. (*See* Def.'s Mot. at 12.) Plaintiff argues that he has fully complied with the exhaustion requirements of § 2675(a). (*See* Pl.'s Mot. at 2-4.) Because the intentional tort exception deprives this Court of jurisdiction over Plaintiff's assault claim, the Court need not resolve the dispute regarding exhaustion of administrative remedies.

## IV. RECOMMENDATION

The Court should **DENY** Plaintiff's motion to strike, **GRANT** Defendant's motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(1), and dismiss the FTCA claims asserted in this action for lack of jurisdiction. Because this ruling resolves the only claims remaining in this action, the Court should direct the Clerk of the Court to close the case upon entry of judgment.

**SO RECOMMENDED on this 25th day of February, 2009.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings, legal conclusions, and recommendation of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE